UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| DONIELLE SIMS, | ) | |
|---|---|---|
| Petitioner, | ) | |
| v. | ) | CAUSE NO. 3:15-CV-154-PPS |
| SUPERINTENDENT, | ) | |
| Respondent. | ) | |

## OPINION AND ORDER

Donielle Sims was convicted by a jury Lake County, Indiana of attempted robbery, criminal confinement, and aggravated battery. He challenges those convictions in this habeas corpus action brought pursuant to Title 28 United States Code, Section 2254.

### Factual Background

Let's start with the facts as they were summarized by the Court of Appeals of Indiana and which I presume to be correct unless rebutted with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Here's what happened:

> The evidence most favorable to the conviction is that on December 17, 2008, as Tamicka Smith returned to her apartment in Gary, she was approached by Sims, who was holding a gun and told her to hurry up and open her door. When Smith was unable to open her door quickly, Sims threatened to shoot her and punched her in the temple. After Smith opened the door, Sims pushed her down onto a couch and began asking

1

her where her gun was. Sims apparently knew that Smith was employed as a security guard, and she was carrying a handgun in a holster on her right hip. She withdrew the gun from her holster as if she was going to give it to Sims, but she shot him instead. Smith and Sims then exchanged several shots, each hitting the other. Sims eventually fled from the apartment, screaming.

Smith was transported to a hospital. Before undergoing surgery, she told police that she knew and had recognized her attacker from the way he talked and that his name was Donny, but she could not remember his last name. Smith later positively identified Sims as her attacker. Smith's surgery required the removal of part of her intestine, and she spent three weeks recovering from her wounds.

Sims, meanwhile, sought treatment for his gunshot wounds at a different hospital. When police asked him how he had sustained his wounds, Sims claimed he had been shot by two Hispanic men. Police managed to recover DNA from blood stains and a cap left in Smith's apartment, and the DNA matched Sims's. In March 2009, Sims wrote Smith a letter in which he asked her to forgive him for shooting her.

The State charged Sims with Class A felony attempted robbery, Class A felony burglary, Class B felony criminal confinement, Class B felony aggravated battery, and Class C felony battery. A jury trial was conducted on January 11–13, 2010. Sims testified that he had agreed to be Smith's boyfriend in exchange for $500, but he decided he did not want to be her boyfriend, which led to a confrontation in Smith's apartment. Sims essentially claimed he shot Smith in self-defense after she shot him first. Sims was found guilty of all charges except the criminal confinement charge. The trial court subsequently entered judgment of conviction only for Class A felony attempted robbery and sentenced Sims to an executed term of forty-five years.

*Sims v. State*, 937 N.E.2d 436 (Ind. Ct. App. 2010); ECF 8-5 at 2-3.

Sims argues that he is entitled to habeas corpus relief, alleging that he was denied effective assistance of counsel when trial counsel: (1) failed to conduct an adequate investigation regarding his relationship with the victim and failed to challenge

2

the victim's testimony with witnesses who could have corroborated Sims' testimony regarding the relationship; (2) failed to suppress Sims' letter to the victim and Sims' statements to the police, who did not give him a *Miranda* warning; (3) failed to advise Sims that he should avoid testifying about his prior convictions; and (4) failed to object to the prosecutor's references to Sims' prior convictions during closing argument.

**<u>Exhaustion of State Remedies</u>**

The first step in any habeas case is to ensure that the matter is properly before me by asking whether the petitioner has exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A); *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004). A petitioner can't come to federal court complaining of an error unless he fairly presents his federal claims to the state courts. *Boyko v. Parke*, 259 F.3d 781, 788 (7th Cir. 2001). Fair presentment "does not require a hypertechnical congruence between the claims made in the federal and state courts; it merely requires that the factual and legal substance remain the same." *Anderson v. Brevik*, 471 F.3d 811, 814–15 (7th Cir. 2006) (citing *Boyko*, 259 F.3d at 788). It does, however, require "the petitioner to assert his federal claim through one complete round of state-court review, either on direct appeal of his conviction or in post-conviction proceedings." *Lewis*, 390 F.3d at 1025 (internal quotations and citations omitted). "This means that the petitioner must raise the issue at each and every level in the state court system, including levels at which review is discretionary rather than mandatory." *Id.* "A habeas petitioner who has exhausted his

3

state court remedies without properly asserting his federal claim at each level of state court review has procedurally defaulted that claim." *Id.*

Sims presented his claim that trial counsel failed to conduct an adequate and professional investigation and failed to call witnesses to challenge the victim's testimony first to the Indiana Court of Appeals and then to the Indiana Supreme Court. ECF 8-8 at 4-10; ECF 8-11. Therefore, I must consider the merits of this one claim. But the balance of his claims—claims 2, 3 and 4 as listed above—cannot go forward. Sims failed to assert these remaining claims at every level of state court review. It is true that he presented them to the Court of Appeals of Indiana. ECF 8-8 at 11-18. But he abandoned those claims when he petitioned for transfer to the Indiana Supreme Court. ECF 8-11. Because he did not fully and fairly present these other claims through one full round of state court review, they are procedurally defaulted.

A habeas petitioner can overcome a procedural default by showing both cause for failing to abide by state procedural rules and a resulting prejudice from that failure. *Wainwright v. Sykes*, 433 U.S. 72, 90 (1977); *Wrinkles v. Buss*, 537 F.3d 804, 812 (7th Cir. 2008), *cert. denied*, 129 S. Ct. 2382 (2009). Cause sufficient to excuse procedural default is defined as "some objective factor external to the defense" which prevented a petitioner from pursuing his constitutional claim in state court. *Murray v. Carrier*, 477 U.S. 478, 492 (1986). A habeas petitioner can also overcome a procedural default by establishing that the Court's refusal to consider a defaulted claim would result in a fundamental miscarriage of justice. *House v. Bell*, 547 U.S. 518, 536 (2006). But to meet this exception,

4

the petitioner must establish that "a constitutional violation has resulted in the conviction of one who is actually innocent of the crime." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). "[P]risoners asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 536–37 (2006).

Sims does not argue that he was prevented from pursuing the procedurally defaulted claims in State court. Though Sims alleges that he is actually innocent, the new evidence he presents here, as discussed in greater detail below, does not convince me that it is more likely than not that no reasonable juror would have found Sims guilty. The eyewitness testimony of the victim, the fact that Sims' DNA was found in her apartment, and the inculpatory letter written by Sims while he was awaiting trial is all strong proof of his guilt. He thus cannot overcome the procedural default of his other claims. As such, I will only analyze his first claim: that he was denied effective assistance of counsel when trial counsel failed to conduct an adequate investigation regarding his relationship with the victim and failed to challenge the victim's testimony with witnesses who could have corroborated Sims' version of events.

**Ineffective Assistance of Counsel: Failure to Investigate**

"Federal habeas review . . . exists as a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through

5

appeal." *Woods v. Donald*, 135 S.Ct. 1372, 1376 (2015) (quotation marks and citation omitted). Relief is only available where the decision of the state court "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

We know from *Woods* that this is a very high bar to surmount: "[This] standard is intentionally difficult to meet. We have explained that clearly established Federal law for purposes of §2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions." *Woods*, 135 S.Ct. at 1376. Just being wrong is not enough. Instead, the petitioner has to show that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

Criminal defendants are entitled to a fair trial but not a perfect one. *Rose v. Clark*, 478 U.S. 570, 579 (1986). To warrant relief, a state court's decision must be more than incorrect or erroneous; it must be objectively unreasonable. *Wiggins v. Smith*, 539 U.S. 510, 520 (2003). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quotation marks omitted).

6

To prevail on an ineffective assistance of counsel claim in the State courts, a petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668 (1984). The test for prejudice is whether there was a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a probability "sufficient to undermine confidence in the outcome." *Id.* at 693. In assessing prejudice under *Strickland* "[t]he likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011). However, "[o]n habeas review, [the] inquiry is now whether the state court unreasonably applied *Strickland*." *McNary v. Lemke*, 708 F.3d 905, 914 (7th Cir. 2013). "Given this high standard, even 'egregious' failures of counsel do not always warrant relief." *Id.*

Sims claims that the State court made an objectively unreasonable determination that trial counsel's failure to investigate did not constitute deficient performance and did not prejudice Sims. At the post-conviction relief stage, Sims argued that trial counsel failed to conduct an adequate investigation regarding his relationship with the victim and failed to challenge the victim's testimony with witnesses who could have corroborated his relationship with the victim. ECF 8-8 at 4-10. He further argued that doing so would have discredited the victim's testimony regarding how the shooting incident occurred, which he says would have resulted in his acquittal. *Id.*

7

With respect to the victim's relationship with Sims, the victim testified that she was able to identify Sims, who was masked when he approached her at her apartment, by his distinctive voice because she knew of him from high school and occasionally saw him and engaged in small talk with him. Trial Tr. 71-76. She had seen him as recently as two months before the shooting incident but did not personally know him or consider him to be a friend. *Id.* She further testified that, immediately after the incident, she informed the police that she knew the identity of her attacker but could only recall his first name. *Id.* at 88-89. In response to trial counsel's questions on cross-examination, she testified that she had never been involved with Sims in a boyfriend-girlfriend relationship and had never given Sims money. *Id.* at 116-17. She also testified that she had a boyfriend in December 2008 and that he was present at the trial. *Id.* at 460.

Sims had a different version of events. He testified as follows:

**Trial Counsel:** Okay. Now what happened December 17th, 2008? You sat here and you heard all the testimony from Tamicka.

**Sims:** Yeah.

**Trial Counsel:** What all happened?

**Sims:** We was kicking it with one another. Once I met her, like I would go meet her every day or every day or two, but, you know, during this time, times was hard for me because, because of my felony conviction, I couldn't get hired nowhere. It was hard for me to find, you know, a decent job to –- excuse me –- the support myself. And I saw that Tamicka had a lot going for her, a house, a car, money, money in the bank, so I devised a plan to use Tamicka for, for some of her money just until I get on my feet.

**Trial Counsel:** What plan did you devise, how did you use Tamicka for money?

> **Sims:** Since she already liked me, it would be easy. I started having sex with her. During this time I told Tamicka all of my problems and I asked her can I have five hundred dollars just until I got on my feet. She agreed only if I would be her boyfriend. I agreed.
>
> **Trial Counsel:** So, you were Tamicka's boyfriend, correct?
>
> **Sims:** That's what I told her, that I would be her boyfriend. She gave me the money and after this, I stopped going around Tamicka, because, you know, I felt bad, but, really, Tamicka didn't turn me on. You know, she's big and, you know, I just don't really, she didn't turn me on and I felt bad about, you know, this, but, you know, and I wanted to tell her about, about this, but I knew Tamicka has guns, a lot of guns. Which, if you play with people's feelings, people will kill you, which she did shoot me. But, I knew I had to confront Tamicka because I took her money and she kept calling my mother's house and I got tired of telling my mother to tell her that I, you know, I'm not at home. So, I knew I had to confront Tamicka. And on this particular day, I went over Tamicka's house with the intent to let her know I'll pay her her money back and I just wanted to be friends with her. I didn't want, I didn't want to be her boyfriend. So, when I got over there, she let me in and she immediately started cussing me out, telling me how I used her and all I wanted was her money and that's when I noticed that she had two guns on her couch. So, that's when I immediately, I humbled myself and tried my best just to tell her that I just wanted to be friends with her. I didn't want to be sexually active with her anymore and she wouldn't let me get a word in. So, I told her I was about to leave and she said, you are not going anywhere and she grabbed one of the guns and I tried to keep her from pointing her gun at me and that's when she shot me. And I quickly went down and as I'm going down, I grabbed the other gun that was on the couch, running towards the back door. I just shot, shot some shots behind me just to keep Tamicka from killing me. And once I got out the back door, I immediately went into shock. I had never been shot before in my life. I thought I was going to die. And when I passed out, I passed out and when I woke up, I was in St. Catherine's Hospital with detectives in my face.

*Id.* at 388-91.

During an evidentiary hearing at the post-conviction relief stage, trial counsel testified as follows:

> **Sims:** Can you tell the court who you interviewed in preparation for trial?
>
> **Trial Counsel:** Well, yes, I interviewed you and the victim. There was a bond hearing, I believe it was, where she gave quite a bit of extensive testimony in the courtroom. I reviewed what she said at that hearing, and basically that's it for the review of testimony from you and witnesses.
>
> **Sims:** Can you tell –- was there a reason why you never interviewed any defense witnesses and never called any defense witnesses to testify at the jury trial in this case?
>
> **Trial Counsel:** There are no defense witnesses that I was aware of, so who was I to call and interview?
>
> **Sims:** I did have two defenses witnesses as coming today, but, you know, I guess you did never ask me.
>
> **Trial Counsel:** I did not interview any witnesses, neither did you ask me to interview any witnesses.
>
> **Sims:** Was there a reason –- was there a reason why you never interviewed the defendant in this case, never learned the facts and circumstances of this case and never properly prepared the defendant's testimony?
>
> **Trial Counsel:** You and I spoke several times in several different locations, in the jail, in the courtroom. I guess my answer there is you and I talked pretty extensively.

PCR Tr. 7-9. Sims did not testify at the evidentiary hearing but presented two other witnesses. Loretta Miller, his mother, testified that, in November and December 2008, the victim called her residence frequently to ask about Sims' location and the five hundred-dollar loan. *Id.* at 15-18. Willie Hill, Sims' godfather who has known Sims since he was four years old, testified that he had given Sims a ride to the victim's house on two occasions. *Id.* at 19-20.

The PCR court credited trial counsel's testimony that he didn't interview other witnesses because he was never told by Sims that other witnesses existed. The Court of Appeals of Indiana picked up on that theme when it found that trial counsel did not perform deficiently because Sims never told trial counsel that there were any other witnesses to interview and because there were no other individuals present at the time of the altercation. ECF 8-10 at 5-6. The appellate court also noted that Sims was able to present evidence regarding his version of the relationship with the victim through his testimony and found that, even if trial counsel had presented witnesses to corroborate Sims' testimony, there was no reasonable probability that it would have affected the outcome of the trial. *Id.*

After reviewing the record, I cannot find that the appellate court's determination regarding trial counsel's failure to investigate or to challenge the victim's testimony regarding the nature of the relationship between Sims and the victim was objectively unreasonable. Even though trial counsel had interviewed Sims and the victim and discussed the case with Sims on multiple occasions,[1] he was not aware of any other witnesses. Trial counsel also challenged the victim's testimony regarding the relationship by asking her questions on cross-examination and by asserting the self-defense theory as an affirmative defense. Additionally, Sims was able to testify regarding his relationship with the victim. Perhaps reasonable minds might disagree on

---

[1] Though Sims alleges that trial counsel met with him on only one occasion three days before trial, the appellate court's reliance on trial counsel's testimony from the evidentiary hearing was not objectively unreasonable.

whether trial counsel should have done more by way of investigation. But a reasonable disagreement is miles apart from being able to say that the decision of the Indiana Court of Appeals is "objectively unreasonable" or "so lacking in justification . . . (as to be) beyond any possibility for fairminded disagreement." *Woods*, 135 S.Ct. at 1376.

What's more, I agree with the conclusion of the Indiana Court of Appeals that there was no prejudice here, in any event. *See* DE 8-10 at 6. Given the limited nature of the testimony from Sims' mother and godfather and their close relationship with Sims, there is no reasonable probability that the testimony they provided at the PCR hearing, had it been given at trial instead, would have affected the outcome of the trial. These witnesses had a built in bias. And a jury would likely have viewed their testimony as a contrivance given the strong evidence against Sims in the form of the victim's eyewitness account, Sims' DNA that was recovered from the apartment, the incriminating letter that Sims sent to the victim while he was awaiting trial, and the false exculpatory statement that Sims made to the hospital that he had been shot by a couple of "Hispanic men."

In sum, the Indiana court's determination that there was neither deficient performance nor prejudice under *Strickland* was not an unreasonable application of that Supreme Court precedent. There is no basis for habeas relief.

Pursuant to Section 2254 Habeas Corpus Rule 11, I must grant or deny a certificate of appealability. To obtain a certificate of appealability under 28 U.S.C. § 2253(c), the petitioner must make a substantial showing of the denial of a constitutional

right by establishing "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). For the reasons explained in this opinion for denying habeas corpus relief, there is no basis for encouraging Sims to proceed further. For the same reasons, he may not appeal *in forma pauperis* because an appeal could not be taken in good faith.

## Conclusion

Accordingly, the court **DENIES** the habeas corpus petition; **DENIES** a certificate of appealability pursuant to Section 2254 Habeas Corpus Rule 11; **DENIES** leave to appeal *in forma pauperis* pursuant to 28 U.S.C. § 1915(a)(3); and **DIRECTS** the clerk to enter judgment in favor of the Respondent and against the Petitioner.

**SO ORDERED** on February 8, 2018.

s/ Philip P. Simon
Judge
United States District Court